**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Craig Franklin, | : | Case No. 4:12-cv-00008 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| Timothy Brunsman, Warden, | : | **MAGISTRATE'S REPORT AND** |
| | : | **RECOMMENDATION** |
| Respondent. | : | |

**I. INTRODUCTION**

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES. Pending are Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus, filed January 3, 2012 (Docket No. 1) and Respondent's Return (Docket No. 7). Given the filling date of the Petition, the provisions of the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) apply. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

For the reasons set forth below, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus.

1

## II. FACTUAL BACKGROUND

Under AEDPA, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The following evidence was presented during this case:

{¶ 2} On July 1, 2005, Youngstown Police Officer Michael Marciano was looking on the east side of Youngstown for Duniek Christian, who had several outstanding warrants. He noticed Christian driving a white Cadillac, with three other black males in the vehicle. Officer Marciano called for backup. By the time the officers looked again for Christian, they did not see him. The officers split up to look for the Cadillac, which coincidentally had been reported stolen.

{¶ 3} Eventually, officers saw the Cadillac again, and a pursuit began. It included the Cadillac and four police cruisers, one of which was unmarked. During the pursuit, the Cadillac crashed into the unmarked police car driven by Detective–Sergeant Mike Lambert. In the car with Detective–Sergeant Lambert were Officer Ramon Cox and Special Agent Guy Hunnyman.

{¶ 4} After the crash, the Cadillac drove away. Sergeant William Ross was the first officer to follow it. He saw someone extend the muzzle of a long gun out of the passenger side of the car. Sergeant Ross stated that the back window of the Cadillac exploded and he came under gunfire. His car was hit.

{¶ 5} Detective–Sergeant Lambert followed Sergeant Ross. He stated that the man in the front passenger seat of the Cadillac was shooting at his car also. He then saw the back window of the Cadillac explode. Detective–Sergeant Lambert stated that at that point, three people were shooting at the officers from the Cadillac.

{¶ 6} Officer Chad Zubal was driving the third police car. He was accompanied by Officer Gregory Mullinex. Officer Zubal stated that at one point the Cadillac made a turn so that the rifles that were shooting out of the backseat of the Cadillac were firing directly at him and Officer Mullinex.

{¶ 7} Officer Brian Voitus was driving the fourth police car. Officer Dave Wilson accompanied him. Officer Voitus's cruiser eventually came under fire from the Cadillac too. He saw two guns shooting from the backseat.

{¶ 8} The Cadillac eventually came to a stop, and three of the occupants bailed out while one occupant shot suppressive fire at the officers with an assault rifle. The three occupants who ran, later

2

identified as Christian, Jumal Edwards, and Brandon Jackson, went into the nearby woods. Eventually, the shooter ran into the woods too.

{¶ 9} The police were not able to apprehend anyone that day. However, the next day, they arrested appellant, along with Christian and Edwards.

{¶ 10} All seven of the officers who were shot at identified appellant as the occupant of the Cadillac who had shot the cover fire at them.

*State v. Franklin*, 178 Ohio App.3d 460, 462-63 (Ohio Ct. App. 2008).

### III. PROCEDURAL BACKGROUND

#### A.    INDICTMENT

Petitioner was indicted by a Mahoning County, Ohio, Grand Jury on March 16, 2006, on

seven counts of felonious assault, first degree felonies in violation of OHIO REV. CODE ANN. §

2903.11(A)(2)(D) (2012) with a firearm specification accompanying each count (Docket No. 7,

Attachment 2, pp. 1-4 of 4). Petitioner's case proceeded to a jury trial where a jury returned

guilty verdicts on all charged counts and specifications. *Franklin*, 178 Ohio App.3d at 463.

Petitioner was later sentenced to ten years on each count, to be served consecutively. *Id*.

Petitioner was also sentenced to five years on each specification, to be served prior to and

consecutive to the ten years for each count and to each other, for a total of 105 years. *Id*.[1]

#### B.    THE DIRECT APPEAL

Petitioner perfected a notice of appeal in the Seventh Judicial District Court of Appeals

for Mahoning County, Ohio, on September 12, 2007 (Docket No. 7, Attachment 8, p. 7 of 7). On

April 23, 2008, Petitioner presented three assignments of error to the Court of Appeals:

---

[1] Plaintiff is also serving a term of twenty-five years to life for complicity to commit murder and aggravated robbery. Petitioner's sentence in his current case is to be served consecutive to the term he is serving on the complicity charges. *Franklin*, 178 Ohio App.3d at 463.

1.  It was error to sentence the appellant to consecutive sentences for the firearm specifications, where they were committed as part of the same act of transaction. The sentence was void as it violated R.C. § 2929.14(D)(1)(C).

2.  It was error to permit the prosecuting [sic] to peremptorily excuse the only black juror on the entire jury venire.

3.  It was error to permit the prosecution to permit the prosecution [sic] to cross-examine appellant concerning a previous murder conviction over the objection of counsel and without a proper limiting instruction.

(Docket No. 7, Attachment 9, pp. 1-10 of 10).

On May 13, 2008, the State filed its Response Brief in opposition to each of Petitioner's assignments of error on appeal (Docket No. 7, Attachment 10). On September 19, 2008, the Seventh District affirmed the trial court convictions, but modified the sentence to reflect a merger of the firearm specifications, making Petitioner's total sentence seventy-five years. *Franklin*, 178 Ohio App.3d at 471.

There was no direct appeal to the Ohio Supreme Court. The time for filing such an appeal expired forty-five days later on Monday, November 3, 2008. See OHIO SUP. CT. PRAC. R. 6.01(A)(1) (the appellant shall file a notice of appeal in the Supreme Court within 45-days from the entry of the judgment being appealed).

## C.   MOTION FOR NEW TRIAL

On April 9, 2009, Petitioner, *pro se*, filed an untimely Motion for New Trial (Docket No. 7, Attachment 11).[2] Petitioner's motion was based on an affidavit of Petitioner's co-defendant,

---

[2] Under OHIO REV. CODE ANN § 2945.80, "a motion for a new trial must be filed within three days after the verdict was rendered . . . unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial in which case it shall be filed within three days from the order of the court finding that he was unavoidably prevented from filing." The Appellate Court upheld Petitioner's guilty verdict on September 19, 2008. *Franklin*, 178 Ohio App.3d at 471. Therefore, the time to file a motion for new trial expired three days later on September 24, 2008, given the intervening weekend. Petitioner filed his Motion more than six months after the deadline expired and provided no "clear and convincing proof" that he was "unavoidably prevented" from filing (Docket No. 7, Attachment 11).

4

Jumal Edwards, who alleged that Petitioner was not at the scene of the crime and did not fire a weapon at the peace officers (Docket No. 7, Attachment 11, pp. 5-6 of 6). The State filed its opposition on April 28, 2009 (Docket No. 7, Attachment 12). On May 4, 2009, the state trial court denied the Motion for New Trial without an evidentiary hearing (Docket No. 7, Attachment 13). On May 20, 2009, Petitioner filed a motion seeking reconsideration of the denial, which was also denied  (Docket No. 7, Attachment 15).[3]

On May 29, 2009, Petitioner, *pro se*, filed a notice of appeal from the denial of his Motion for New Trial (Docket No. 7, Attachment 16). Petitioner, subsequently represented by Public Defender Melissa M. Prendergast, presented three assignments of error:

> 1.   The trial court abused its discretion when it did not request that Mr. Franklin file a motion for leave to file an out-of-time motion for new trial based on newly discovered evidence.
>
> 2.   The trial court abused its discretion when it did not hold an evidentiary hearing on Mr. Franklin's motion for new trial.
>
> 3.   The trial court abused its discretion in not granting Mr. Franklin's motion for new trial based on newly discovered evidence.

(Docket No. 7, Attachment 19, pp. 11-16 of 18). On February 12, 2010, the State filed its Answer Brief in opposition to all three of Petitioner's assignments of error (Docket No. 7, Attachment 20).

On September 10, 2010, the Seventh District affirmed the trial court judgment denying Petitioner's Motion for New Trial. *State v. Franklin*, 2010 Ohio 4317 (Ohio Ct. App. 2010). The Appellate Court stated that Petitioner's motion failed "to show that he was unavoidably prevented from discovering the purported newly discovered evidence," a state law requirement.

---

[3]  Petitioner did file an untimely Reply to the State's Response on May 15, 2009 (Docket No. 7, Attachment 14).

*Id*. at *26. There was no appeal of the judgment to the Ohio Supreme Court. The time for filing

such an appeal expired forty-five days later on Monday, October 25, 2010. See OHIO SUP. CT.

PRAC. R. 6.01(A)(1).

**D.      REQUEST FOR POST-CONVICTION RELIEF**

On September 24, 2010, Petitioner, *pro se*, filed an untimely petition for post-conviction

relief pursuant to OHIO REV. CODE ANN § 2953.21 (Docket No. 7, Attachment 22).[4] Petitioner's

attached memorandum claimed that a police photograph array was unduly suggestive and

unreliable and should have been suppressed (Docket No. 7, Attachment 22, pp. 2-3 of 4). On

September 28, 2010, the State filed a Motion to Dismiss, arguing that the petition was untimely

(Docket No. 7, Attachment 23). On October 14, 2010, Petitioner filed a brief in opposition to the

State's Motion to Dismiss (Docket No. 7, Attachment 24). On October 18, 2010, the trial court

dismissed Petitioner's Petition for untimeliness (Docket No. 7, Attachment 24). Petitioner did

not appeal this Judgment.

**E.      RULE 60(B) MOTION**

On January 14, 2011, Petitioner, *pro se*, filed a motion for an evidentiary hearing

pursuant to Ohio Civil Rule 60(B) (Docket No. 7, Attachment 25). On March 8, 2011, the State

filed a Motion to Dismiss Petitioner's Rule 60(B) motion, arguing that: (1) Petitioner's motion to

void judgment must be construed as a subsequent petition for post-conviction relief, which was

now untimely; and (2) Petitioner's allegation that the trial court failed to hold a probable cause

---

[4] OHIO REV. CODE ANN § 2953.21(A)(2) mandates that a petition for post-conviction relief be filed within one
hundred eighty (180) days after the date on which the transcript is filed in the Court of Appeals in the direct appeal
from a petitioner's judgment of conviction. In Petitioner's case, the transcript was filed in the direct appeal on
November 27, 2007, (Docket No. 7, Attachment 8, p. 5 of 7) therefore requiring the petition for post-conviction
relief to be filed no later than May 25, 2008. Petitioner did not file his petition for post-conviction relief until
September 24, 2010 (Docket No. 7, Attachment 22).

hearing is barred by res judicata, as the issue should have been raised on appeal (Docket No. 7, Attachment 26).

On July 19, 2011, the trial court found the government's Motion well-taken and dismissed Petitioner's Rule 60(B) Motion (Docket No. 7, Attachment 27). Petitioner did not appeal the Judgment.

**F.    PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, *pro se*, filed a Petition under § 2254 for Writ of Habeas Corpus on January 3, 2012, which is now before this Court, alleging four grounds for relief:

1.  Did the trial court abuse its discretion when it summarily denied Petitioner's motion for new trial without first conducting a hearing to determine whether he was unavoidably prevented from discovering the evidence upon which he relied in his motion for new trial?

2.  Did the trial court abuse its discretion when it summarily denied Petitioner's motion for new trial without a hearing when it was based on the newly discovered affidavit [of] Jumal Edwards whose testimony would bolster the defense at trial?

3.  Should Petitioner's motion for new trial be granted when he has provided credible, newly discovered evidence that would have materially affected the outcome of the trial?

4.  Petitioner's convictions were obtained by a violation of the protection against double jeopardy, where he was indicted on charges that were previously dismissed in juvenile court.

(Docket No. 1).

The State opposes all four claims of Petitioner's habeas Petition and implores this Court to deny the Writ (Docket No. 7, pp. 10-22 of 24).

## IV. ANALYSIS

### A.  HABEAS STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. at 413. The term "unreasonable" must be based on an objective interpretation. Therefore, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2792-93 (1979)).

8

In order to obtain federal habeas corpus relief, a petitioner must establish the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011) (*quoting Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011)). This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (2011) (*citing Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Harrington*, 131 S.Ct. at 787.

**B.    PROCEDURAL ISSUES**

Petitioner fails to provide any ground upon which this Magistrate may grant relief. As an initial matter, Petitioner's entire Petition may be procedurally defaulted due to its untimeliness and ineligibility for equitable tolling. Even if the Petition were timely, all four claims would be procedurally defaulted given Petitioner's failure to either raise his claims during the State appellate process or exhaust his claims in State court. Further, Petitioner's fourth claim is without merit as it is an incorrect interpretation of the Double Jeopardy Clause.

**1.    HABEAS STATUTE OF LIMITATIONS STANDARD**

The AEDPA imposes a one-year statute of limitations on an application for a writ of habeas corpus challenging the judgment of a State court. 28 U.S.C. § 2244(d)(1). The limitation period begins from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

State proceedings become final "when the period during which a defendant could petition the Supreme Court for a writ of certiorari expires" or when cert is denied. *Clay v. United States*, 537 U.S. 522, 525 (2003).

A "properly filed" application for State post-conviction relief or other collateral review with respect to the "pertinent judgment or claim" will toll the running of the limitations period. 28 U.S.C. § 2244(d)(2). "An application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Such requirements generally pertain to the form of the document, the time limits for its delivery, the appropriate filing court, or the filing fee. *Id*.

In order for a pending application for state review to concern the "pertinent judgment or claim," the review "must address one or more of the grounds of the federal habeas petition in question" *Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999). In other words, the instant habeas motion must address the same claim or claims as either the petition for post-conviction relief or motions for other collateral relief. Otherwise, the statute will not toll because "the

10

purpose of tolling, which is to provide the state courts with the first opportunity to resolve the prisoner's federal claim, is not implicated." *Id*.

Here, the AEDPA statute of limitations began to run on November 3, 2008, and expired one year later on November 3, 2009. Petitioner would arguably have this Court find that either his Motion for New Trial or petition for post-conviction relief tolled the running of the statute. However, neither of these motions was timely filed (Docket No. 7, Attachment 11; Docket No. 7, Attachment 22). As such, they cannot be considered to be "properly filed" for purposes of 28 U.S.C. § 2244(d)(2). Furthermore, not all of the claims in Petitioner's present Petition were presented to the State for review. Therefore, the statute of limitations cannot be tolled and Petitioners's Petition must be dismissed as untimely.

Despite the untimeliness of these claims, Petitioner may still be eligible for relief from the limitations period. The AEDPA statute of limitations period is also subject to *equitable* tolling. See *Holland v. Florida*, 130 S.Ct. 2549 (2010); *see also Hall v. Warden,* 662 F.3d 745 (6th Cir. 2011). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). The court's equity power is exercised on a case-by-case basis and courts recognize the need for "flexibility" as opposed to "mechanical rules." *Holland*, 130 S.Ct at 2563. However, the equitable tolling doctrine is granted by courts only "sparingly" (*Robertson*, 624 F.3d at 784), and "is not intended for those who sleep on their rights." *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). Petitioner bears the burden of proof. *Holland*, 130 S.Ct. at 2566.

11

A habeas petitioner is entitled to equitable tolling only if two requirements are met: (1) a petitioner has pursued his rights diligently; and (2) some extraordinary circumstance prevented timely filing." *Holland*, 130 S.Ct. at 2565.[5] "The diligence required for equitable tolling purposes is *reasonable* diligence, not maximum diligence." *Id*. (emphasis added).[6] The Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See Keeling v. Warden*, 673 F.3d 452, 463-64 (6th Cir. 2012) (Petitioner waited almost three years after his original appeal to the Ohio Court of Appeals before filing a *pro se* post-conviction motion).

Here, there is nothing to suggest that Petitioner pursued his rights diligently. Petitioner filed two motions after his initial direct appeal, one for a new trial and one for post-conviction relief, both of which were untimely (Docket No. 7, Attachment 11; Docket No. 7, Attachment 22). Petitioner's current petition for Writ of Habeas Corpus is *also* untimely, filed more than two years after the expiration of the statute of limitations period (Docket No. 1).[7] Despite his claim, nothing in Petitioner's Petition provides an explanation for Petitioner's inaction (Docket No. 1). Petitioner asks this Court for leniency with regard to the filing deadlines, citing his ignorance of the law and its statutes of limitations as justification (Docket No. 1, p. 27 of 27). The Sixth

---

[5] It must be noted that the *Holland* test replaced the previous test set forth in *Dunlap v. United States*, 250 F.3d. 1001 (6th Cir. 2001) for determining the applicability of equitable tolling. According to the Sixth Circuit in *Hall*, "whereas *Dunlap* sets forth a variety of factors for the courts to consider, not all of which are necessarily comprehensive or always relevant, *Holland* dictates the two requirements that must be met before a habeas petitioner is entitled to equitable tolling relief. Given this distinction, we conclude that *Holland's* two-part test has replaced *Dunlap's* five-factor inquiry as the governing framework in the circuit for determining whether a habeas petitioner is entitled to equitable tolling." 662 F.3d at 750.

[6] In *Holland*, the court held that the petitioner acted with diligence when he wrote his attorney numerous letters requesting crucial information and repeatedly contacted state courts, clerks, and the Florida Bar Association in an effort to remove his attorney from the case. 130 S.Ct. at 2565. The day the petitioner discovered his time to file a habeas petition had expired, he prepared a *pro se* petition and promptly filed it with the court. *Id*.

[7] The time for filing a timely direct appeal to the Ohio Supreme Court expired on November 3, 2008. Therefore, the one-year statute of limitations period expired one year later on November 3, 2009. Petitioner's current Petition was filed on January 3, 2012 (Docket No. 1).

Circuit has long held that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (*quoting Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). Therefore, Petitioner fails to satisfy the first prong of the *Holland* test.

Petitioner must next establish that some extraordinary circumstances prevented his timely filing of his Writ. *Hall*, 662 F.3d at 749. The Sixth Circuit has found extraordinary circumstances in several instances, none of which are applicable to this case. For example, in *Jones v. United States* (689 F.3d 621 (6th Cir. 2012)), the petitioner missed his deadline by three months. 689 F.3d at 627. The petitioner was transferred to a different prison multiple times, separating him from his legal materials. *Id*. Additionally, the petitioner was illiterate and relied on other prisoners to interpret legal information. *Id*. The court found that his illiteracy, along with various other medical conditions, "impeded his ability to adequately obtain legal information." *Id*. The court further noted that any of these circumstances alone may not constitute "extraordinary circumstances," but "the combination of all of these factors justifies applying equitable tolling to Jones's claims." *Id*. (*citing Solomon v. United States*, 467 F.3d 928, 934-35 (6th Cir. 2006)).

In *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011), the petitioner alleged that his serious and protracted mental illness prevent him from timely filing his petition. 662 F.3d at 739. The petitioner alleged that he was mentally incompetent, stating that he had "missed the filing deadline because he had been hospitalized on numerous occasions for paranoid schizophrenia and other psychoses." *Id*. at 740.  The Court held that "a petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations." *Id*. at 742.

13

These cases stand in contrast to the facts in *Hall*, where the Sixth Circuit found that the petitioner's situation did not warrant the application of equitable tolling. *Hall*, 662 F.3d 745. In *Hall*, the petitioner alleged that he was entitled to equitable tolling for three reasons: (1) lack of access to a trial transcript; (2) lack of notice of the delayed filing with the Ohio Supreme Court; and (3) his reliance on a case that was overturned by the Ohio Supreme Court in 2007. *Id*. at 750. The Sixth Circuit held that "the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling." *Id*. at 750-51.[8]

Petitioner's situation does not rise to the level of "extraordinary circumstances" found in *Jones* and *Ata*. Again, Petitioner simply cites to his *pro se* status and lack of legal knowledge as justification for his untimely filing (Docket No. 1, pp. 26-27 of 27). "Proceeding pro se is not a rare and exceptional circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). Therefore, Petitioner fails to satisfy the second prong of the *Holland* test and ultimately fails to present a case for equitable tolling.

## 2. PROCEDURAL DEFAULT STANDARD OF REVIEW

Even if Petitioner's claims were not barred for their untimeliness, they would be barred for Petitioner's failure to present them to or exhaust them with the state courts. Claims in federal habeas corpus can only be pursued if certain procedural requirements are met. Federal courts lack jurisdiction to consider a habeas petition claim not fairly presented to the state courts. *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (*citing Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A petitioner "fairly presents a federal habeas claim to the state courts only if he 'asserted both the factual and legal basis for his claim.'" *Hicks v. Straub*, 377 F.3d 538, 552

---

[8] The petitioner's other two arguments were dismissed by the Court of Appeals for the petitioner's failure to raise them in the district court. *Hall*, 662 F.3d at 752-54.

(2004) (*quoting McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). In making this

determination, a habeas court may consider whether:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional
> law or in terms sufficiently particular to allege a denial of the specific constitutional
> right in question; (2) the petitioner relied upon federal cases employing the
> constitutional analysis in question; (3) the petitioner relied upon state cases
> employing the federal constitutional analysis question; or (4) the petitioner alleged
> 'facts well within the mainstream of [the pertinent] constitutional law.'

*McMeans*, 228 F.3d at 681.

Not only must a state prisoner fairly present his case to the state courts, he must also

*exhaust* his state remedies before bringing his claim in a federal habeas corpus proceeding. 28

U.S.C. § 2254(b), (c). A habeas petitioner satisfies the exhaustion requirement when the highest

court in the state in which the petitioner has been convicted has had a full and fair opportunity to

rule on the claims. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If there remains a remedy

under state law the petitioner has not yet pursued, exhaustion has not occurred, and the federal

habeas court cannot entertain the merits of the claim. *Drummond v. Houk*, 761 F.Supp.2d 638,

662 (N.D. Ohio 2010).

In *Maupin v. Smith*, the Sixth Circuit outlined that now familiar test to be followed in

cases of potential procedural default. 785 F.2d 135 (6th Cir. 1986). First, the federal court must

determine whether there is a state procedural rule applicable to the petitioner's claim and

whether the petitioner failed to comply with that rule. *Id*. at 138. Second, the federal court must

determine whether the state courts enforced the state procedural sanction - that is, whether the

state courts actually based their decisions on the procedural rule. *Id*. Third, the federal court must

consider whether the state rule is an adequate and independent state ground on which the state

15

can rely to foreclose federal review of a federal constitutional claim. *Id*. To be independent, "a state procedural rule and the state courts' application of it 'must rely in no part on federal law.'" *Drummond*, 761 F.Supp.2d at 663 (citing *Fautenberry v. Mitchell*, 2001 U.S. Dist. LEXIS 25700 (S. D. Ohio 2001)). To be adequate, "a state procedural rule must be 'firmly established and regularly followed' by the state courts at the time it was applied. *Drummond*, 761 F.Supp.2d at 663 (*quoting Beard v. Kindler*, 130 S.Ct. 612, 617 (2009)).

In determining whether the first three *Maupin* factors are met, the federal court looks to the "last explained state court judgment." *Drummond*, 761 F.Supp.2d at 664 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)). If this court rendered its opinion based on the state procedural bar, default occurs. *Maupin*, 785 F.2d at 138. If this court reached its opinion based on the merits of the claim, default does not occur and the federal habeas court may also consider the merits of the claim. *Id*.

Finally, under *Maupin*, if a claim is procedurally defaulted, a federal court may only consider the merits of the claim if the petitioner demonstrates either: (1) there was cause for him not to follow the procedural rule and he was actually prejudiced by the alleged constitutional error; or (2) a fundamental miscarriage of justice will result from a bar of federal habeas review. *Id*. With regard to the first option, to establish "cause," a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule. *Kirby v. Beightler*, 2010 U.S. Dist. LEXIS 87158, *14 (N.D. Ohio 2010). To establish "prejudice," the petitioner must show the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a

constitutional dimension. *Id.* There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial. *Id.*

The second option, demonstrating a fundamental miscarriage of justice, is closely tied to the "actual innocence" doctrine. *Gibbs v. United States*, 655 F.3d 473, 477-78 (6th Cir. 2011) (*citing Schlup v. Delo*, 513 U.S. 298, 321 (1995)). According to the United States Supreme Court, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Actual innocence is an extremely narrow exception, and one that is very rarely successful. *Gibbs*, 655 F.3d at 477-78.

To demonstrate a fundamental miscarriage of justice, a petitioner must prove he or she is actually innocent of the crime for which he or she was convicted. *Brinkley v. Houk*, 2012 U.S. Dist. LEXIS 60621 (N.D Ohio 2012). Actual innocence means factual innocence, not mere legal insufficiency. *Id.* To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Cleveland v. Bradshaw*, 760 F.Supp.2d 751, 756 (N.D. Ohio 2011) (quoting *Schlup*, 513 U.S. at 327). To prevail, a petitioner must support his allegations with new reliable evidence not presented at trial, whether it be exculpatory evidence, scientific evidence, critical physical evidence, or trustworthy eyewitness accounts. *Bradshaw*, 760 F.Supp.2d at 756.

### a. GROUNDS ONE, TWO, AND THREE ARE PROCEDURALLY DEFAULTED

Petitioner's first three claims allege that the trial court abused its discretion by summarily denying Petitioner's Motion for New Trial without first conducting a hearing (Docket No. 1, pp.

17

10-16 of 27). Although Petitioner raised these claims during his appeal from the denial of his

Motion for New Trial, Petitioner failed to subsequently appeal these claims to the Ohio Supreme

Court. Petitioner's failure to raise these issues on an appeal violates 28 U.S.C. § 2254(b), (c).

Furthermore, Petitioner fails to present any substantial or trustworthy evidence of his

actual innocence. During his Motion for New Trial, Petitioner sought to introduce statements

from his co-defendants which stated that Petitioner was either not at the scene of the crime or did

not fire a weapon at the peace officers (Docket No. 7, Attachment 11). Petitioner failed to

produce this evidence in a timely manner and his Motion was dismissed (Docket No. 7,

Attachment 13). These statements are not present in the current record before this Court (Docket

No. 1). Even if they were, they are not sufficient to establish "actual innocence." The testimony

of two co-defendants to the crime in question is not sufficient evidence to convince this Court of

Petitioner's *factual* actual innocence.

### b.    GROUND FOUR IS PROCEDURALLY DEFAULTED AND WITHOUT MERIT

In his fourth claim, Petitioner alleges that his convictions were obtained through a

violation of the protection against double jeopardy, given that he was indicted on charges that

were previously dismissed in juvenile court (Docket No. 1, p. 16 of 27). Not only is this claim

procedurally defaulted for Petitioner's failure to raise it at any point during his appeals process,

it is also substantively without merit.

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution

states that no person shall "be subject for the same offence to be twice put in jeopardy of life or

limb . . ." U.S. CONST. amend. V.  The Clause affords a defendant three basic protections: "[i]t

protects against a second prosecution for the same offense after acquittal. It protects against a

18

second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493 (1984) (*quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

In juvenile cases, jeopardy attaches when the defendant is "put to trial before the trier of the facts, that is, when the Juvenile Court, as the trier of the facts, beg[ins] to hear evidence. *Breed v. Jones*, 421 U.S. 519, 531 (1975).

Here, Petitioner was merely *charged* as a juvenile and those charges were subsequently dismissed (Docket No. 7, Attachment 30). No juvenile court ever heard evidence regarding these charges (Docket No. 7, Attachment 30). There was no acquittal nor punishment (Docket No. 7, Attachment 30). Therefore, Petitioner's fourth claim of a violation Double Jeopardy is without merit.

## VI. CONCLUSION

For these reasons, the Magistrate recommends the Court deny Petitioner's Petition for Writ of Habeas Corpus.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   March 22, 2013

19

## VII. Notice

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.